# DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

| UNITED STATES OF AMERICA | ) |
|---|---|
| | ) |
| v. | ) Criminal Action No. 2018-0014 |
| | ) |
| NATHANIEL THOMAS, JR., | ) |
| | ) |
| Defendant. | ) |
| | ) |

**Attorneys:**
**Rhonda Williams-Henry, Esq.,**
St. Croix, U.S.V.I.
   *For the United States*

**Mark Milligan, Esq.,**
St. Croix, U.S.V.I.
   *For Defendant*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER comes before the Court on the Government's "Motion for Change of Vicinage for Sentencing Hearing" ("Vicinage Motion"), filed on July 16, 2019 (Dkt. No. 78), which seeks to transfer the sentencing of Defendant Nathaniel Thomas, Jr., ("Defendant" or "Thomas") from the Division of St. Croix ("St. Croix Division") to the Division of St. Thomas/St. John ("St. Thomas Division"); and Defendant's Amended Opposition thereto (Dkt. No. 82). For the reasons discussed below, the Court will grant the Government's motion and transfer the sentencing in the instant matter from the St. Croix Division to the St. Thomas Division, within the District of the Virgin Islands.

### I. BACKGROUND

On March 13, 2018, following a seven-day trial, Defendant was convicted by a jury on the following counts in Criminal Matter No. 2018-0005: (1) Felon in Possession of a Firearm in

violation of 18 U.S.C. § 922(g)(1) and 924(a)(2); Unauthorized Possession of a Firearm in violation of 14 V.I.C. § 2253(a); and Reckless Endangerment First Degree in violation of 14 V.I.C. § 625(a).[1] Defendant was remanded to the custody of the U.S. Marshals Service ("USMS") and taken to Golden Grove Adult Correctional Facility ("Golden Grove") on St. Croix.

On March 15, 2018—two days after his conviction—Defendant escaped from Golden Grove. A manhunt led by USMS ensued and Defendant was apprehended over three weeks later, on April 7, 2018, in Guayanilla, Puerto Rico. On July 19, 2018, the Government charged Defendant in a one-count Indictment in the instant matter with "Escape from Custody," in violation of 18 U.S.C. § 751(a). Trial in this matter was scheduled to commence on December 17, 2018. (Dkt. No. 23).

Approximately two weeks before trial, the Government and the United States Marshal for the District of the Virgin Islands, James Clark ("Marshal Clark"), raised certain security concerns relating to holding the trial on St. Croix. The Court continued the trial at the behest of the Defendant, and without objection from the Government, and held an evidentiary hearing on December 12, 2018.[2]

During the hearing, Marshal Clark testified that Defendant escaped from Golden Grove on

---

[1] Defendant was charged in a five-count Indictment filed by the Government on February 20, 2018, based on events that occurred on or about May 15, 2016 in St. Croix. In addition to his convictions on Counts 1, 2, and 3 noted above, no verdict was rendered on Count 4 (Discharging a Firearm) and Defendant was found not guilty on Count 5 (Assault Third Degree). (Crim. Matter No. 2018-0005, Dkt. No. 54). On August 31, 2018, Defendant was sentenced to 96 months on Count 1, with credit for time served; 15 years on Count 2; and 5 years on Count 3. The terms of imprisonment for Counts 2 and 3 run concurrently with each other and consecutive to the term of imprisonment for Count 1. The Court ordered the federal sentence to be served first.

[2] The Court considers the evidentiary hearing to be part of the record for purposes of the resolution of this matter because the testimony at the hearing addressed the same basic issue—security concerns raised by Defendant's presence at Golden Grove.

March 15, 2018 by walking out of the facility's interior fence to a breach in the exterior fence, where someone allegedly helped him escape. Marshal Clark testified that BOC refused to house Defendant at Golden Grove again because they were wary of his proven ability to escape and his awareness of BOC's security deficiencies at the facility. Marshal Clark stated that he spoke with then BOC director, Rick Mullgrav, twice and both times Director Mullgrav said that "under no circumstances" would they take Defendant back at Golden Grove, thus reflecting how high a risk Defendant was deemed to pose for BOC.

Marshal Clark further testified that, to his knowledge, the circumstances that led to Defendant's escape had not all been rectified. Therefore, Marshal Clark acknowledged that, even if BOC had agreed to house Defendant at Golden Grove, the USMS would still have opposed this arrangement given Defendant's prior escape, his criminal history, and the time and resources that had to be expended to locate Defendant after his escape. According to Marshal Clark, although he explored other alternatives which would have allowed Defendant's trial to be held on St. Croix, none proved viable.[3]

Marshal Clark reiterated that, under these circumstances where Defendant posed an "extreme security risk" if detained at Golden Grove, and the USMS was faced with no viable options to house him, the USMS requested that the Court transfer the trial to the St. Thomas Division. Marshal Clark stated that BOC had agreed to house Defendant in its facility on St.

---

[3] The options explored included: (1) housing Defendant in the federal courthouse on St. Croix; (2) housing Defendant at Golden Grove with extra guards; (3) flying Defendant in and out of Puerto Rico each day; or (4) housing Defendant in a hotel on St. Croix. The first option was rejected as prohibited in consultation with the General Counsel for USMS. The second option was rejected by BOC because of the "extraordinary security concern" posed by Defendant on St. Croix. The third option was cost-prohibitive and the USMS flight contractor used to transport criminal defendants could not coordinate Defendant's daily transport during trial. Finally, hotels were not used in this context.

Thomas, which is adjacent to the federal courthouse[4] and where more internal controls are available. According to Marshal Clark, the USMS "d[id] not make this request [for a transfer] arbitrarily or for the convenience of its [staff]," but because the USMS just had no options to house Defendant on St. Croix. Marshal Clark noted that it was "rare" for the USMS to make this type of request, claiming that in his over 20 years in service, he has never made such a request.

Before the Court issued an opinion regarding the transfer of the trial, Defendant requested a change of plea hearing. (Dkt. No. 51). Defendant pleaded guilty to the escape charge on March 19, 2019 (Dkt. No. 59), thus obviating the need for a ruling by the Court on the requested change of vicinage for the trial.

On July 16, 2019, the Government filed the instant Vicinage Motion (Dkt. No. 78), seeking an intradistrict transfer of the upcoming sentencing hearing from St. Croix to St. Thomas. (Dkt. No. 78 at 2). In the Motion, the Government reiterates the same security-related concerns as before, i.e., the escape risk that Thomas presents as determined by both BOC and USMS; BOC's refusal to house Thomas at Golden Grove; and the lack of an adequate facility to house Thomas on St. Croix. *Id*. at 2. Defendant opposes this request, claiming that the Government has failed to provide a "reasonable basis or justification for its request." (Dkt. No. 82 at 1).

## II.     APPLICABLE LEGAL PRINCIPLES

Whether to transfer a case from one location to another is generally committed to the discretion of the district courts. *In re U.S.*, 273 F.3d 380, 387 (3d Cir. 2001). The Federal Rules of Criminal Procedure distinguish between transfers of a criminal case within a single district (known as intradistrict transfers or transfers of vicinage) and transfers between districts (known as

---

[4] Marshal Clark contrasted this to the situation in St. Croix where the USMS has a 10-mile journey to transport Defendant to and from Golden Grove and the federal courthouse.

interdistrict transfers). The former are governed by Rule 18 of the Federal Rules of Criminal Procedure, *United States v. Chitolie*, 2010 WL 2384550, at *3-6 (D.V.I. June 8, 2010), and the latter are governed by Rule 21. *United States v. Schock*, 2016 WL 7156461, at *1 (C.D. Ill. Dec. 7, 2016); *United States v. Mathis*, 2015 WL 5012159, at *3 (W.D. Va. Aug. 21, 2015) (discussing the differences between Rules 18 and 21).

Under Rule 18, which governs the place of prosecution and trial, it is generally the case that "the government must prosecute an offense in a district where the offense was committed." Fed.R.Crim.P. Rule 18.[5] Under Rule 18, the court thus has discretion—albeit not unlimited— to transfer proceedings within a district. *See e.g., United States v. Addonizio*, 451 F.2d 49, 62 (3d Cir. 1971). While discussions of intradistrict transfers usually involve trials, the Court deems the standards established under Rule 18 to be instructive in considering the propriety of an intradistrict transfer of sentencing proceedings.[6]

In evaluating whether an intradistrict transfer under Rule 18 is appropriate, courts have applied the Rule 21 factors for interdistrict transfers that the Supreme Court established in *Platt v. Minnesota Mining & Mfg. Co.,* 376 U.S. 240 (1964); *see also Chitolie*, 2010 WL 2384550 at *4-6 (listing cases); *United States v. Joyce,* 2008 WL 2367307, at *2 (W.D. Pa. 2008) ("[G]enerally the same principles involved in deciding whether to transfer a case to another district are relevant to

---

[5] Rule 18 states: "Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed. The court must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice."

[6] Rule 20, which is entitled "Transfer for Plea and Sentence," pertains only to transfers of sentencing proceedings between districts as confirmed by the requirement that the United States Attorney for *each* district participate in the process.

the decision of where within the district to set the trial.").[7] These *Platt* factors are:

> (1) location of the defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business if case not transferred; (6) expenses of the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket conditions of each potential district; and (10) any other special elements which might affect the transfer.

*In re U.S.*, 273 F.3d 380, 387–88 (3d Cir. 2001) (citing *Platt*, 376 U.S. at 243-44); *Chitolie*, 2010 WL 2384550 at *4 (same). "A balance should be struck among the most important factors in the particular case to determine whether transfer is appropriate." *In re U.S.*, 273 F.3d at 388; *see also Addonizio*, 451 F.2d at 62 (upholding trial court's transfer from Newark to Trenton within the District of New Jersey as "a proper exercise of the [trial court's] discretion conferred by Rule 18" wherein other factors such as the concentrated public interest and pre-trial publicity in the case in the Newark area and the facilitation of the jury selection process in Trenton outweighed the consideration of convenience for defendants who argued that such a transfer and the daily trips it would entail would be an undue hardship on them, their counsel, and the witnesses). Further, "[t]he burden is on the moving party to establish that a balancing of proper interests weigh in favor of the transfer." *In re U.S.*, 273 F.3d at 388; *Chitolie*, 2010 WL 2384550 at *3 (same).

---

[7] Rule 21 reads in pertinent part:
> (a) For Prejudice. Upon the defendant's motion, the court must transfer the proceeding against that defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there.
> (b) For Convenience. Upon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice.

Fed. R. Crim. P. 21.

## III. DISCUSSION

As discussed above, the Government's motion for a transfer of the sentencing hearing from the St. Croix Division to the St. Thomas Division is driven by the security concerns expressed by the USMS pertaining to the lack of housing options for Defendant in St. Croix. (Dkt. No. 78 at 2). Defendant opposes the transfer, arguing that the Government has failed to provide any support for its assertions that Defendant is an "escape risk" and that there is no adequate facility to house Defendant on St. Croix. (Dkt. No. 82 at 1). Defendant further challenges the Government's "pompous[]" reliance on the BOC Director's decision in refusing to "house (Defendant) on St. Croix under any circumstances," and argues that the Government has also failed "to address the time and inconvenience to the Court and counsel, as well as the added travel expenses involved in making the change." *Id*. Finding that the Government has borne its burden of establishing that the balance of interests favors a transfer, and finding further that Defendant's arguments to the contrary are unavailing, the Court will grant the Government's Motion.

### A. The *Platt* Factors

As a preliminary matter, the Court notes that the Virgin Islands consists of one judicial district, divided into two divisions: the St. Croix Division and the St. Thomas/St. John Division. While the Government's motion thus presents a question as to the propriety of an intradistrict transfer under Rule 18, the Court incorporates the Rule 21 *Platt* factors in concluding that transfer of the sentencing hearing to the St. Thomas Division is warranted.

First, the location of defendant and counsel and the accessibility of the sentencing location (*Platt* Factors Nos. 1, 7, and 8) are not factors that weigh heavily in the Court's analysis because little, if any, inconvenience would be occasioned by a transfer. Because Defendant is currently in custody in Puerto Rico, he must be transferred to the Virgin Islands for sentencing. Whether he is

transported to St. Thomas or St. Croix is of no consequence, thus rendering Factor No. 1 neutral. Further, while the Court recognizes that Defendant's counsel is located on St. Croix, and that a sentencing hearing on St. Thomas would cause some inconvenience for him, the Court deems any such inconvenience to be minimal. Indeed, attorneys practicing in the Virgin Islands often travel between St. Croix and St. Thomas. Moreover, St. Thomas is only a short 20 minute flight from St. Croix. *United States v. Tettleton*, 2009 WL 1307888, at *2 (W.D. La. May 8, 2009) (finding, *inter alia*, that while the defendant's preferred division might be more convenient, the inconvenience of the selected division was slight because the distance between the two cities could be traveled in less than two hours). Thus, holding the sentencing hearing on St. Thomas would not present an undue burden for Defense counsel, nor would the location create a problem of accessibility. Factor Nos. 7 and 8 are thus inconsequential.

The Court further finds that *Platt* Factor No. 9 is neutral in that the Court's docket will not suffer any negative effects with a transfer of this case for sentencing, nor will the normal course of court business be disrupted in either division. Meanwhile, *Platt* Factor No. 5—disruption of defendant's business—is not applicable here as Defendant is in custody and there is nothing in the record that indicates that Defendant has any business dealings which may be implicated here. The Court also finds that *Platt* Factor No. 3 (location of events likely to be in issue) and Factor No. 4 (location of documents and records likely to be involved) are of no moment here because, unlike sometimes at trial, these factors are not at issue for purpose of sentencing.

Turning to *Platt* Factor No. 6—expenses of the parties—to the extent that Defendant's opposition to transfer is grounded in costs to be incurred by counsel (Dkt. No. 80 at 1), the Court notes that Defendant has appointed Criminal Justice Act ("CJA") counsel. Therefore, Defense

counsel would be reimbursed for reasonable expenses incurred and the cost factor for counsel would therefore be negated. *See* 18 U.S.C.A. § 3006A.

The Court recognizes that there is certainly some inconvenience that would result from a transfer of the sentencing proceeding to St. Thomas. In addition to the minimal inconvenience to counsel described above, Defendant's family and friends on St. Croix, who have supported him and who may desire to be present in person at the sentencing, would be inconvenienced by the time and cost associated with the necessary travel. The Court finds, however, that in balancing the interests, this inconvenience is outweighed by the substantial concerns raised by the Government.

Indeed, the considerations that the Court finds most compelling under the circumstances here are the security concerns expressed by Marshal Clark, which are embodied in *Platt* Factor No. 10—"any other *special elements* which might affect the transfer." *Platt*, 376 U.S. at 243-44 (emphasis added). This catch-all provision under Rule 21 finds its functional equivalent in Rule 18's factor concerning "the prompt administration of justice." *See e.g., United States v. Lipscomb*, 299 F.3d 303, 340, 342 (5th Cir. 2002) (holding that although Rule 18 "refers only to convenience and prompt administration of justice, the district court may consider other factors" when considering an intradistrict transfer, including "docket management, *courthouse space and security*, and . . . pretrial publicity") (emphasis added); *United States v. Merrill,* 513 F.3d 1293, 1304 (11th Cir. 2008) (explaining that "the prompt administration of justice" includes "matters of security"). Courts have thus found that security considerations are a proper factor to consider in deciding whether to grant an intradistrict transfer. *See id.* at 1305 (finding that the trial court did not abuse its discretion in ordering an intradistrict transfer where the original division "lacked necessary security measures"); *United States v. Roberson*, 124 F. App'x 860, 865 (5th Cir. 2005) (upholding the trial court's intradistrict transfer by emphasizing the latter's specific finding of

9

"security considerations," which include the fact that the division to which the case was transferred had a detention center which "provided both ample physical facilities to conduct the trial as well as access to more federal marshals for general security purposes."); *see also Schock*, 2016 WL 7156461 at *2 (finding court security is an appropriate consideration for intradistrict transfer); *United States v. Reed*, 2008 WL 2705225, at *1 (D.S.C. July 7, 2008) ("Aspects generally considered on a motion for an intradistrict transfer include . . . security issues."); *United States v. Patton*, 2006 WL 2038628, at *1 (N.D. Miss. July 19, 2006) (finding intradistrict transfer appropriate where the "convenience of the defendants and witnesses" was outweighed by "critical security considerations and the possible prejudicial effect of pretrial publicity on potential jurors").

In *United States v. Harris*, the Fifth Circuit upheld the lower court's decision in favor of an intradistrict transfer due to the district court's security concerns, which were based on an evaluation made by USMS. 25 F.3d 1275, 1278 (5th Cir. 1994). The appellate court found that the intradistrict transfer was appropriate where "defendant's interests in trial" in the original division were "outweighed by the security measures available" in the transfer division. *Id*.

Similarly here, the Government has moved for a change of vicinage based on BOC and USMS's determination that Thomas poses an escape risk, and the lack of alternative housing options in St. Croix to hold him. (Dkt. No. 78 at 2). Marshal Clark reported that BOC has refused to house Defendant on St. Croix due to his previous escape from Golden Grove and his awareness of BOC's security deficiencies there. Marshal Clark noted that, even if BOC had agreed to house Defendant at Golden Grove, the USMS would nonetheless have vetoed such an arrangement.

Further, an intradistrict transfer is particularly appropriate in this case where the BOC is able and willing to house Defendant in its detention facility in St. Thomas, which is directly connected to the federal courthouse there. The close proximity of the detention facility to the

court—unlike the situation in St. Croix where officers must travel several miles back and forth from Golden Grove to the court—necessarily reduces the security risks attendant to this Defendant. *Scatliffe*, 580 F. Supp. at 1485 (finding that decision to transfer trial from St. Croix to St. Thomas was proper where, *inter alia*, "the Criminal Justice complex there is immediately adjacent to the courthouse"); *see also Mathis*, 2015 WL 5012159 at *4 (affirming trial court's intradistrict transfer to Roanoke Division because the latter was "better equipped to handle this particular case's 'security requirements,'" where it noted, *inter alia*, the court's close proximity to the jail which could accommodate the defendants).

The lack of adequate facilities to hold a defendant has been considered a significant factor weighing in favor of an intradistrict transfer. Specifically, in *Lipscomb*, the appellate court upheld the trial court's transfer to another division in finding that the trial court appropriately considered "the amount of jail space available there for defendants or witnesses and the adequacy of security arrangements in a particular criminal trial." 299 F.3d at 343 (5th Cir. 2002); *see also United States v. McKinney*, 53 F.3d 664, 673 (5th Cir. 1995) (upholding trial court's intradistrict transfer where the court considered, among other things, "the lack of availability of jail space in Wichita Falls to hold the four incarcerated defendants").

Accordingly, the Court finds that the lack of adequate housing for Defendant in St. Croix is a significant "matter[] of security" which militates in favor of an intradistrict transfer of the sentencing from St. Croix to St. Thomas to accomplish Rule 18's mandate for the "prompt administration of justice." *Lipscomb*, 299 F.3d at 343; *Harris*, 25 F.3d at 1278 ("Rule 18 allows a court to consider 'the prompt administration of justice' in fixing the place of trial, and 'matters of security clearly fall within that consideration.'") (quoting *United States v. Afflerbach,* 754 F.2d 866, 869 (10th Cir.1985), *cert. denied,* 472 U.S. 1029 (1985)). Accordingly, while the St. Croix

Division would be more convenient or preferable for Defendant because his counsel, family, and friends are here, the Court finds that the significant and specific security concerns in this case as articulated by USMS strongly outweigh Defendant's convenience or preference. An intradistrict transfer of the sentencing hearing is thus warranted under the circumstances here.

    **B.    Defendant's Arguments**

Defendant's arguments in opposing the transfer of the sentencing hearing do not alter the Court's conclusion. First, while Defendant claims that the Government has provided no support for the proposition that Defendant is an "escape risk," the fact that Defendant escaped from Golden Grove once before certainly indicates that he does in fact pose such a risk. Second, Defendant's contention that there is no support for the assertion that there is a lack of adequate facilities to house Defendant on St. Croix is belied by Marshal Clark's testimony during the December 12, 2018 hearing, in which he gave a thorough accounting of the other alternatives he explored to be able to house Defendant on St. Croix, and his testimony that none of them are viable. Third, Defendant's contention that the Government should not rely on the BOC Director's decision not to house Defendant at Golden Grove under any circumstances is misguided. Marshal Clark testified that BOC refused to house Defendant at Golden Grove because of his proven ability to escape from the facility and his awareness of BOC's security deficiencies at the facility—reasons which the Court finds appropriately pragmatic. Further, Marshal Clark testified that, even if BOC had agreed to house Defendant at Golden Grove, the USMS would still have refused such an arrangement because the circumstances that led to Defendant's escape had not all been rectified, and in view of Defendant's prior escape, his criminal history, and the time and resources that had to be expended to locate Defendant after his escape. Finally, as discussed above, any inconvenience and time associated with the transfer of the sentencing hearing are outweighed by

the security concerns that Defendant presents.

In short, the Government has carried its burden of demonstrating that the balance of interests favors a transfer of the sentencing proceeding in this matter from the St. Croix Division to the St. Thomas Division. Defendant's arguments to the contrary are rejected.

## IV. CONCLUSION

For the foregoing reasons, the Government's Vicinage Motion to transfer the sentencing hearing in this case from the St. Croix Division to the St. Thomas/St. John Division will be granted. The undersigned judge will remain assigned to this matter.

An appropriate Order accompanies this Memorandum Opinion.

Date: July 23, 2019  _____/s/_____
WILMA A. LEWIS
Chief Judge